OPINION OF THE COURT
Beverly S. Cohen, J.
This is a case of first impression involving the interpretation of section 12.01 of the Arts and Cultural Affairs Law. The issues presented are, inter alia, (1) whether a publisher and seller of multiples and prints conceived by an artist is an art merchant as defined by the statute, and (2) whether the artist who conceives the image, delivers it to a printer chosen by the publisher, approves the final prints, and signs them has delivered a "print of his own creation” to an art merchant.
Plaintiff Tom Wesselmann Studios, Inc., moves for an, order granting the following relief: (a) granting leave to amend the complaint to add Karla MacKay Graphics, Inc., Karla MacKay Editions, Inc., and Dedicated Arts, Ltd., as party defendants, and Tom Wesselmann and Claire Wesselmann as party plaintiffs; (b) enjoining defendants during the pendency of this action from transferring, selling, assigning, pledging, exploiting, licensing, conveying, copying, duplicating, disposing of, or doing any other act, either directly or indirectly, that prevents plaintiffs from exercising complete dominion or control over any art created by Tom Wesselmann, except for art created by him but acquired by defendants from independent third parties in which Tom Wesselmann is not a joint owner (hereinafter the Art); (c) directing defendants to turn over the Art to a person chosen by the court, without security; and (d) granting a voluntary discontinuance of the action against defendant MacKay-Cooper, Inc. (MCI).
The complaint names Tom Wesselmann Studios, Inc. (Studios) as the sole plaintiff. Studios, which is owned by Tom Wes *478 selmann and his wife Claire, was formed sometime after 1990 to acquire joint title with International Images, Inc., to a building located at 30 Cooper Square in Manhattan. Plaintiff wishes to amend the complaint to add Tom Wesselmann and his wife individually as plaintiffs because the owner of the Art may be determined to be one or both of the Wesselmanns individually or their corporation.
Plaintiff also seeks to add Karla MacKay Graphics, Inc. (KMG), Karla MacKay Editions, Inc., and Dedicated Arts, Ltd., as defendants because these entities have allegedly sold some of the Art and may have possession or control of the Art that remains unsold.
The motions to amend are granted and the amended complaint attached to the moving papers is deemed operative for purposes of this motion, although the new corporate defendants have not yet been served with process and are therefore not yet subject to this court’s jurisdiction. There is no reason not to join the parties who own, possess, control, or have sold the Art and there will be no prejudice to defendants from the granting of this motion since the individual defendant Karla MacKay owns and controls the new corporate defendants.
The motion to discontinue the action against MCI is also granted. The parties agree that any dispute involving the building at 30 Cooper Square is subject to an arbitration agreement. Moreover, the amended complaint contains no allegations regarding and seeks no relief from MCI.
Wesselmann is a world-renowned artist for his work in paintings, sculpture, drawings, and prints. From 1988 until November 1993, all of his limited edition prints were marketed by International Images, Inc. (Images), which is wholly owned by Hugh and Karla MacKay. It is undisputed that through their efforts the value of plaintiff’s work was greatly enhanced.
Hugh and Karla MacKay are husband and wife. They are currently in the process of obtaining a divorce.
The prints were produced from silk screen masters or lithographic plates. It is undisputed that Wesselmann conceived the images for all of the prints.
The process by which most of Wesselmann’s multiple editions were created was that a maquette, a painting, or a lithographic plate of Mr. Wesselmann’s and a color chart work were delivered to a printer hired by the MacKays. The printer would actually create the metal screens from which the prints would be made, or would work from a lithographic plate drawn *479 on by Mr. Wesselmann. The parties agree that Mr. Wesselmann would then approve a trial print. After the prints were made, Mr. Wesselmann would sign the ones to be sold.
The parties dispute the issue of delivery of the prints. Mr. Wesselmann claims that he went to the printers, reviewed the trial and final prints, and signed the ones that he approved. Mrs. MacKay contends that the printer delivered the proofs to her for her approval before Mr. Wesselmann signed them.
The parties also dispute their respective roles in supervising the printer. Karla MacKay claims that Mr. Wesselmann "refused to supervise the printing of a single portfolio” (affidavit of Karla MacKay 53). However, plaintiffs submit several affidavits (copies only have been provided to the court) from independent printers which support their claim that Mr. Wesselmann was intimately involved in supervising the printing process.
The agreement between Wesselmann and Images, which was signed by Images’s President Hugh MacKay, is dated August 25, 1988. It provides that:
"On all sales of your works, published by us, the gross profit after expenses of advertising, printing, freight, paper, and related printing expenses, but not sales and travel expenses, will be divided equally (50% / 50%) between us * * *
"A recapitulation of sales, expenses, and monies due will be created on a monthly basis. Payment based upon collected sales will be included with the recapitulation, which will be submitted by us within 30 days after the end of the month which it represents” (moving affidavit, exhibit A [hereinafter the Agreement]).
In November of 1993, Mr. Wesselmann terminated the Agreement because of Hugh MacKay’s poor health and the MacKays’ failed marriage and consigned all prints returned by Images to KMG for marketing.
On March 30, 1995, Karla MacKay (Karla), Dedicated Arts, Ltd. (DAL), Studios, and Mr. Wesselmann entered into a stipulation during the pendency of this action giving Karla and DAL the right to sell certain prints and providing for the proceeds to be submitted to a locked box at the Sterling National Bank.
The first and second causes of action in the complaint are for breach of fiduciary duty and violation of the Arts and Cultural Affairs Law, respectively. They both seek permanent injunctive relief. It is alleged, inter alia, that plaintiff believes that *480 defendants, particularly Karla, have removed plaintiff’s artwork from the State of New York, have refused to return it to him, have sold it clandestinely, and have failed to pay plaintiff his share of the proceeds.
Most importantly, it is alleged that the MacKays took possession of the Art as trustees of plaintiff pursuant to the Arts and Cultural Affairs Law.
The record supports many of these claims. Exhibit I to the moving papers is a statement prepared by defendants stating that as of December 31, 1993, they owed Mr. Wesselmann $334,187.16. A quotation from an affidavit filed by Karla in her divorce proceeding admits that the Art was "consigned by [Mr. Wesselmann] in trust to Images” and that "the proceeds derived from the sale of [Mr. Wesselmann’s] art work by Images * * * by statute are deemed to constitute trust funds” (affidavit of Wesselmann ¶ 8, at 3). Karla does not deny that she has moved the Art to Florida where she now lives or that she continues to sell it in contravention of plaintiff’s explicit directions. On July 20, 1995, Karla’s attorney wrote to plaintiff’s attorney that Karla "has an absolute right to sell her print inventory”. Nor does Karla state where she has taken the Art, except for the statement that a small portion of it remains at 30 Cooper Square.
Hugh MacKay has submitted an affidavit in which he states that he believes that Karla has moved the Art to Florida and is selling it without accounting to Images.
Arts and Cultural Affairs Law § 12.01 (1) provides that:
"(a) Whenever an artist * * * delivers or causes to be delivered * * * a print of his own creation to an art merchant for the purpose of exhibition and/or sale on a commission, fee or other basis of compensation, the delivery to and acceptance thereof by the art merchant establishes a consignor / consignee relationship between such artist * * * and such art merchant with respect to said work, and:
"(i) such consignee shall thereafter be deemed to be the agent of such consignee with respect to the said work;
"(ii) such work is trust property in the hands of the consignee for the benefit of the consignor;
"(iii) any proceeds from the sale of such work are trust funds in the hands of the consignee for the benefit of the consignor;
"(iv) such work shall remain trust property notwithstanding its purchase by the consignee for his own account until the price is paid in full to the consignor; provided that, if such *481 work is resold to a bona fide third party before the consignor has been paid in full, the resale proceeds are trust funds in the hands of the consignee for the benefit of the consignor to the extent necessary to pay any balance still due to the consignor and such trusteeship shall continue until the fiduciary obligation of the consignee with respect to such transaction is discharged in full.”
Defendants’ position is that this statute is inapplicable in this case because they are not art merchants, because they did not sell the Art, because Mr. Wesselmann did not deliver the prints to them, because the prints were not of Mr. Wesselmann’s own creation, because a corporation cannot be an artist, and because multiples are not fine art.
The court finds that defendants are art merchants within the meaning of section 12.01. Defendants’ position that they are not is predicated on the theory that since they published the multiples they cannot be art merchants.
However, section 11.01 (2) of the Arts and Cultural Affairs Law specifically states that one who has a particular skill, or who employs an agent with a particular skill, can still be an art merchant. The term art merchant is defined as including one who deals "exclusively or non-exclusively” in "fine art or multiples” or who: "by his occupation holds himself out as having knowledge or skill peculiar to such works, or to whom such knowledge or skill may be attributed by his employment of an agent or other intermediary who by his occupation holds himself out as having such knowledge or skill.”
Defendants’ knowledge and skill in publishing, or their employment of printers to publish the multiples, does not alter their status as art merchants.
Defendants’ investment of money to pay for the publishing of the multiples does not, as they contend, establish that the Art was not consigned to them pursuant to section 12.01 (1) (a), as the statute provides that the consignor/consignee relationship arises whenever the artwork is delivered for the purpose of sale "on a commission, fee or other basis of compensation” (emphasis supplied). Here, the undertaking by defendants to deduct certain expenses and not others before dividing the sales price with Mr. Wesselmann is simply another basis of compensation. Moreover, it is uncontradicted that plaintiffs have not received all the compensation to which they are entitled under the Agreement.
Whether Mr. Wesselmann delivered the prints to defendants or to the printer employed by the defendants is a distinction *482 without significance because the statute specifically provides that the consignment relationship arises whenever the artist "delivers or causes to be delivered” a print of his own creation.
The multiples are prints of Mr. Wesselmann’s own creation because the term "artist” as applied to multiples is defined as "the person who conceived or created the image * * * which constitutes the master from which the individual print was made”. (Arts and Cultural Affairs Law § 11.01 [1].) Here there is no dispute that Mr. Wesselmann conceived the images for all of the Art.
In addition, the statute uses the terms "print” and "multiple” interchangeably: " 'Print’ in addition to meaning a multiple produced by, but not limited to, such processes as engraving, etching, woodcutting, lithography and serigraphy, also means multiples produced * * * from photographic negatives” (Arts and Cultural Affairs Law § 11.01 [14]). " 'Visual art multiples’ or 'multiples’ means prints * * * and similar art objects produced in more than one copy and sold, offered for sale or consigned * * * for an amount in excess of one hundred dollars” (Arts and Cultural Affairs Law § 11.01 [20]).
The statute clearly applies to prints or multiples as well as to fine art.
It is apparent from the record that the defendants did sell the Art, although they now claim that they merely "marketed” and "distributed” it. The fact is that defendants received money in return for it and that the Agreement with Mr. Wesselmann was that it was to be sold by defendants.
An artist can be a corporation pursuant to section 11.01 (1) and (13) of the Arts and Cultural Affairs Law.
Plaintiffs have established their right to a preliminary injunction pursuant to CPLR 6301. They have shown a likelihood of success on the merits of the claim pursuant to the Arts and Cultural Affairs Law. Plaintiffs have demonstrated that it is likely that they will succeed in proving their claim that the Art is trust property in defendants’ hands held for the benefit of plaintiffs. Plaintiffs’ allegations that Karla has taken the Art that is the subject of this action out of the State of New York, that she is selling it, and that plaintiffs are owed money for past sales are uncontradicted. If Karla continues doing this it would render ineffectual the judgment compelling the return of the Art. It also appears that the MacKays may be unable to pay a judgment in plaintiffs’ favor. A preliminary injunction compelling the placement of the Art in the hands of an inde *483 pendent third party while this action is pending will maintain the status quo and will not prejudice either party.
Accordingly, it is ordered that the parties shall appear at a conference in Part 30, room 321, on April 24, 1996 at 2:00 p.m. to discuss the appointment of a receiver to hold and/or sell the property during the pendency of this action and the appropriate bond; and it is further ordered that the temporary restraining order issued on January 30, 1996 and continued on February 8, 1996 is continued until entry of a final order hereon following the conference; and it is further ordered that the motion to amend the complaint is granted; and it is further ordered that the amended complaint annexed to the affidavit of Tom Wesselmann, sworn to on January 15, 1996, is deemed served on the defendants who have appeared, who shall answer it within 20 days of service upon them of a copy of this interim order and decision with notice of entry; and it is further ordered that the motion to discontinue the action against Mac-Kay-Cooper, Inc., is granted.